

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

JUN – 4 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

October 2007 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>            v.<br><br>HENRY T. NICHOLAS, III,<br><br>            Defendant. | SA CR 08 **SA CR 08 - 00140**<br><br>I N D I C T M E N T<br><br>[21 U.S.C. § 846: Conspiracy to Distribute and Possess With Intent to Distribute Controlled Substances and to Maintain Places for the Purpose of Distributing and Using Controlled Substances; 21 U.S.C. § 846: Conspiracy to Acquire Controlled Substances By Fraud and Deception; 21 U.S.C. § 856(a)(1): Maintaining and Using a Place for the Purpose of Distributing and Using Controlled Substances]<br><br>**[UNDER SEAL]** |

The Grand Jury charges:

**COUNT ONE**

**[21 U.S.C. § 846]**

**I.   INTRODUCTION**

At all times relevant to this Indictment:

1.   Defendant HENRY T. NICHOLAS, III ("NICHOLAS") was an individual residing in Orange County, within the Central District of California.  Defendant NICHOLAS was a co-founder of Broadcom Corporation ("Broadcom"), a publically held technology company headquartered in Irvine, California.  From approximately 1998 through 2003, defendant NICHOLAS served as Broadcom's Chief Executive Officer and co-chairman of Broadcom's Board of Directors.

2.   Defendant NICHOLAS owned, possessed, leased, used and maintained one or more of the following properties for, among other things, the purpose of distributing and using controlled substances:

a.   A residential real property located on Rodeo Circle, Laguna Hills, California (the "Rodeo Residence").

b.   A commercial warehouse-office space located at 27324 Camino Capistrano, including Suites 165 and 166, Laguna Niguel, California (the "Warehouse").

c.   A residence located at 9 Telescope, Newport Coast, California (the "Telescope House").

d.   A condominium-style residence located at One Turnberry Place, 2877 Paradise Road, Suite 3201, Las Vegas, Nevada (the "Turnberry Condo").

## II.   OBJECTS OF THE CONSPIRACY

3.   Beginning in approximately January 1999 and continuing through at least approximately December 2005, in Orange County, within the Central District of California, and elsewhere, defendant NICHOLAS and other co-conspirators both known and unknown to the Grand Jury knowingly and intentionally conspired and agreed with each other:

a.   To distribute and possess with intent to distribute controlled substances, including, without limitation, MDMA (ecstacy), a Schedule I Controlled Substance, and cocaine and methamphetamine, Schedule II Controlled Substances, in violation of Title 21, United States Code, Section 841(a)(1); and

b.   To maintain places, namely, the Rodeo Residence, the Warehouse, the Telescope House, and the Turnberry Condo, for the purpose of distributing and using controlled substances in violation of Title 21, United States Code, Section 856(a)(1).

## III.  MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

4.   The objects of the conspiracy were carried out, and were to be carried out, in substance, as follows:

a.   Defendant NICHOLAS maintained places, namely, the Rodeo Residence, the Warehouse, the Telescope House, and the Turnberry Condo (the "Drug-Involved Premises") for the purpose of distributing and using controlled substances;

b.   Defendant NICHOLAS obtained and employed, directed, and caused co-conspirators and associates to obtain controlled substances, including, without limitation, MDMA (ecstacy),

- 3 -

1  cocaine, and methamphetamine, for distribution and use at the
2  Drug-Involved Premises and elsewhere;

3          c.   At times, defendant NICHOLAS employed, directed,
4  and caused co-conspirators and associates to invoice defendant
5  NICHOLAS for such controlled substances using various code words,
6  including, without limitation, "supplies," "party favors,"
7  "refreshments," and "E" (ecstacy).

8          d.   Defendant NICHOLAS obtained and employed, directed,
9  and caused co-conspirators and associates to obtain large
10  quantities of cash from financial accounts under defendant
11  NICHOLAS's control for purchasing controlled substances and
12  maintaining the Drug-Involved Premises;

13          e.   Defendant NICHOLAS spiked the drinks of others with
14  MDMA (ecstacy) without their knowledge, including, without
15  limitation, the drinks of technology executives and
16  representatives who worked for Broadcom's customers;

17          f.   Defendant NICHOLAS hired prostitutes and escorts
18  for himself and customers, representatives, and associates of
19  Broadcom and other businesses entities with which he was
20  affiliated and supplied such prostitutes and escorts with
21  controlled substances; and

22          g.   Defendant NICHOLAS used threats of physical
23  violence and death and payments of money to attempt to conceal
24  his unlawful conduct.
25  ///
26  ///
27  ///
28  ///

IV. **OVERT ACTS**

5. In furtherance of the conspiracy, and to accomplish its objects, on or about the following dates, defendant NICHOLAS and other co-conspirators known and unknown to the Grand Jury knowingly and intentionally committed and caused others to commit the following overt acts, among others, in the Central District of California and elsewhere:

**Overt Act No. 1**: In 1999, defendant NICHOLAS possessed and maintained the Rodeo Residence.

**Overt Act No. 2**: In early 1999, at the Rodeo Residence, defendant NICHOLAS distributed tablets of MDMA (ecstacy) to several associates.

**Overt Act No. 3**: In or around 1999, defendant NICHOLAS constructed an underground room and tunnel on the Rodeo Residence property.

**Overt Act No. 4**: In early 1999, in and around Anaheim, California, defendant NICHOLAS distributed tablets of MDMA (ecstacy) to several associates.

**Overt Act No. 5**: Between approximately July 23 and 25, 1999, at the Woodstock 1999 Concert, in Rome, New York, defendant NICHOLAS possessed with intent to distribute MDMA (ecstacy).

**Overt Act No. 6**: Between approximately July 23 and 25, 1999, at the Woodstock 1999 Concert, in Rome, New York, defendant NICHOLAS distributed MDMA (ecstacy) to a technology executive without the executive's knowledge.

**Overt Act No. 7**: On or about October 9, 1999, at the Rodeo Residence, defendant NICHOLAS possessed MDMA (ecstacy) and cocaine.

- 5 -

**Overt Act No. 8:** On about October 9, 1999, at the Rodeo Residence, defendant NICHOLAS distributed and caused to be distributed MDMA (ecstacy) and cocaine.

**Overt Act No. 9:** On or about October 11, 1999, a co-conspirator invoiced defendant NICHOLAS for, among other things, the purchase of controlled substances described as "Party Favors."

**Overt Act No. 10:** On or about October 12, 1999, defendant NICHOLAS caused a bank wire transfer in the amount of $15,453 to a co-conspirator.

**Overt Act No. 11:** On or about December 31, 1999, defendant NICHOLAS possessed and caused to be possessed approximately 300 tablets of MDMA (ecstacy).

**Overt Act No. 12:** On or about December 31, 1999, a co-conspirator invoiced defendant NICHOLAS for, among other things, approximately 300 tablets of MDMA (ecstacy) described as "Party Favors (300)" (the "December 31, 1999 Invoice").

**Overt Act No. 13:** On or about December 31, 1999, defendant NICHOLAS caused to be paid the December 31, 1999 Invoice.

**Overt Act No. 14:** In 2000, defendant NICHOLAS possessed and maintained the Rodeo Residence.

**Overt Act No. 15:** In or around 2000, defendant NICHOLAS built out the Warehouse with private rooms, decorative art, furnishings, and electronics.

**Overt Act No. 16:** In or around 2000, defendant NICHOLAS opened the Warehouse as a place to distribute and use controlled substances.

1     **Overt Act No. 17**: In early 2000, in New Orleans, Louisiana,
2 defendant NICHOLAS used MDMA (ecstacy) to spike the drink of a
3 technology executive without the executive's knowledge.

4     **Overt Act No. 18**: In or around early May 2000, in New
5 Orleans, Louisiana, defendant NICHOLAS knowingly possessed and
6 caused to be possessed approximately 50 tablets of MDMA
7 (ecstacy).

8     **Overt Act No. 19**: In or around May 2000, a co-conspirator
9 invoiced defendant NICHOLAS for, among other things,
10 approximately 50 tablets of MDMA (ecstacy) described as "E" (the
11 "May 2000 Invoice").

12     **Overt Act No. 20**: In or around May 2000, a co-conspirator
13 caused the May 2000 Invoice to be revised so that it re-described
14 the "E" as "Refreshments."

15     **Overt Act No. 21**: On or about June 2, 2000, defendant
16 NICHOLAS caused a wire transfer of approximately $32,000 to a co-
17 conspirator.

18     **Overt Act No. 22**: On or about June 17, 2000, defendant
19 NICHOLAS possessed and caused to be possessed approximately 280
20 tablets of MDMA (ecstacy).

21     **Overt Act No. 23**: On about June 17, 2000, a co-conspirator
22 recorded in a handwritten note the purchase of approximately 280
23 tablets of MDMA (ecstacy) described as "Extacy 200 x $20, Extacy
24 $20 x 50 + $20 x 30" for defendant NICHOLAS in connection with
25 the KROQ "Weenie Roast."

26     **Overt Act No. 24**: On or about June 19, 2000, a co-
27 conspirator invoiced defendant NICHOLAS for expenses incurred and

28

- 7 -

1 services rendered in connection with the KROQ "Weenie Roast" in
2 Anaheim.

3     **Overt Act No. 25:** In or around August 2000, defendant
4 NICHOLAS attempted to construct a further underground room
5 beneath the Rodeo Residence property.

6     **Overt Act No. 26:** Between approximately October 6 and 10,
7 2000, in New York, New York, defendant NICHOLAS possessed and
8 caused to be possessed various controlled substances for
9 distribution to others.

10     **Overt Act No. 27:** On or about October 10, 2000, a co-
11 conspirator invoiced defendant NICHOLAS for, among other things,
12 approximately 32 tablets of MDMA (ecstacy) described as
13 "Supplies: 30 x $20 & 2 x $10."

14     **Overt Act No. 28:** On or about October 13, 2000, defendant
15 NICHOLAS possessed and caused to be possessed controlled
16 substances for distribution to others in connection with a CD
17 release party.

18     **Overt Act No. 29:** On or about October 13, 2000, a co-
19 conspirator invoiced defendant NICHOLAS for, among other things,
20 various controlled substances described as "Supplies per Nick"
21 (the "October 13, 2000 Invoice").

22     **Overt Act No. 30:** On or about October 13, 2000, defendant
23 NICHOLAS caused the October 13, 2000 Invoice to be paid.

24     **Overt Act No. 31:** On or about October 25, 2000, a co-
25 conspirator recorded the purchase of $3,500 worth of "e" or MDMA
26 (ecstacy), along with other controlled substances, for defendant
27 NICHOLAS.

28

- 8 -

**Overt Act No. 32**: On or about October 25, 2000, a co-conspirator invoiced defendant NICHOLAS for, among other things, various controlled substances described as "Supplies ... per Nick" (the "October 25, 2000 Invoice").

**Overt Act No. 33**: On or about October 26, 2000, defendant NICHOLAS caused the October 25, 2000 Invoice to be paid.

**Overt Act No. 34**: On or about October 28, 2000, at the Rodeo Residence, defendant NICHOLAS distributed MDMA (ecstacy) to others.

**Overt Act No. 35**: On or about November 10, 2000, a co-conspirator invoiced defendant NICHOLAS for, among other things, various controlled substances described as "Supplies" (the "November 10, 2000 Invoice").

**Overt Act No. 36**: On or about November 10, 2000, defendant NICHOLAS caused the November 10, 2000, Invoice to be paid.

**Overt Act No. 37**: In 2001, defendant NICHOLAS possessed and maintained the Rodeo Residence.

**Overt Act No. 38**: In 2001, defendant NICHOLAS possessed and maintained the Warehouse.

**Overt Act No. 39**: In or around 2001, defendant NICHOLAS directed co-conspirators to maintain a supply of cocaine, MDMA (ecstacy), methamphetamine, and other controlled substances for distribution and use at the Warehouse.

**Overt Act No. 40**: In 2001, defendant NICHOLAS regularly maintained and caused to be regularly maintained a supply of MDMA (ecstacy) tablets, cocaine, methamphetamine, and other controlled substances for distribution and use at the Warehouse.

**Overt Act No. 41**: In or around 2001, defendant NICHOLAS directed a Broadcom employee to maintain a constant supply of approximately $10,000 in cash for defendant NICHOLAS's personal use.

**Overt Act No. 42**: Between approximately December 31, 2000, and January 3, 2001, defendant NICHOLAS distributed and caused to be distributed various controlled substances at the Warehouse.

**Overt Act No. 43**: On or about January 28, 2001, a co-conspirator drafted a "ballpark budget" for defendant NICHOLAS in connection with a Superbowl event at the Warehouse to include "225 Units" of "E" or MDMA (ecstacy).

**Overt Act No. 44**: On or about January 28 and 29, 2001, defendant NICHOLAS possessed and caused to be possessed approximately 225 tablets of MDMA (ecstacy).

**Overt Act No. 45**: On about January 28 and 29, 2001, at the Warehouse, defendant NICHOLAS distributed and caused to be distributed MDMA (ecstacy), cocaine, methamphetamine, and other controlled substances.

**Overt Act No. 46**: On or about February 15, 2001, a co-conspirator caused defendant NICHOLAS to be pre-billed for approximately $5,000 for the purchase of controlled substances and other expenses for an event in Las Vegas, Nevada (the "February 15, 2001 Pre-Bill").

**Overt Act No. 47**: On or about February 16, 2001, defendant NICHOLAS caused the February 15, 2001 Pre-Bill to be paid.

**Overt Act No. 48**: On or about February 21, 2001, a co-conspirator invoiced defendant NICHOLAS for the Superbowl event of January 28 and 29, 2001.

- 10 -

1    **Overt Act No. 49**: In or around 2001, in the lobby of
2  Broadcom's offices in Irvine, California, defendant NICHOLAS
3  directed a Broadcom employee to provide approximately $5,000 to
4  $10,000 in cash to a drug courier in exchange for an envelope
5  containing controlled substances.

6    **Overt Act No. 50**: In or around 2001, defendant NICHOLAS
7  distributed and used controlled substances during a flight on a
8  private plane between Orange County, California, and Las Vegas,
9  Nevada, causing marijuana smoke and fumes to enter the cockpit
10 and requiring the pilot flying the plane to put on an oxygen
11 mask.

12   **Overt Act No. 51**: In 2002, defendant NICHOLAS possessed and
13 maintained the Rodeo Residence.

14   **Overt Act No. 52**: In 2002, defendant NICHOLAS possessed and
15 maintained the Warehouse.

16   **Overt Act No. 53**: In 2002, defendant NICHOLAS possessed and
17 maintained the Telescope House.

18   **Overt Act No. 54**: In 2002, defendant NICHOLAS possessed and
19 maintained the Turnberry Condo.

20   **Overt Act No. 55**: On or about June 19, 2002, defendant
21 NICHOLAS entered into a $1,000,000 settlement agreement (the
22 "Settlement Agreement") with a Broadcom employee who had
23 knowledge of defendant NICHOLAS's unlawful narcotics activities.

24   **Overt Act No. 56**:  On or about June 29, 2002, pursuant to
25 the Settlement Agreement, which contractually prevented the
26 Broadcom employee from speaking about defendant NICHOLAS's
27 unlawful narcotics activities, Broadcom paid $1,000,000 to the
28 Broadcom employee and the employee's attorney.

- 11 -

**Overt Act No. 57**:  On or about November 22, 2002, defendant NICHOLAS caused fees to be paid for the Turnberry Condo in the amount of approximately $2,046.

**Overt Act No. 58**: In 2003, defendant NICHOLAS possessed and maintained the Telescope House.

**Overt Act No. 59**: In 2003, defendant NICHOLAS possessed and maintained the Turnberry Condo.

**Overt Act No. 60**: On or about April 25, 2003, defendant NICHOLAS caused fees to be paid for the Turnberry Condo in the amount of approximately $2,046.

**Overt Act No. 61**: On or about July 2, 2003, defendant NICHOLAS caused fees to be paid for the Turnberry Condo in the amount of approximately $2,071.

**Overt Act No. 62**: Between approximately October 3 and 5, 2003, at the Turnberry Condo, defendant NICHOLAS distributed and caused to be distributed controlled substances.

**Overt Act No. 63**: In or around November 2003, defendant NICHOLAS caused a co-conspirator to pick up supplies for the Telescope House.

**Overt Act No. 64**: On or about November 26, 2003, defendant NICHOLAS caused fees to be paid for the Turnberry Condo in the amount of approximately $2,071.

**Overt Act No. 65**: In 2004, defendant NICHOLAS possessed and maintained the Telescope House.

**Overt Act No. 66**: In 2004, defendant NICHOLAS possessed and maintained the Turnberry Condo.

- 12 -

1    **Overt Act No. 67:** On or about February 27, 2004, defendant
2  NICHOLAS caused fees to be paid for the Turnberry Condo in the
3  amount of approximately $2,071.

4    **Overt Act No. 68:** On or about May 30, 2004, at the Turnberry
5  Condo, defendant NICHOLAS distributed and caused to be
6  distributed controlled substances.

7    **Overt Act No. 69:**  On or about June 28, 2004, defendant
8  NICHOLAS caused fees to be paid for the Turnberry Condo in the
9  amount of approximately $2,099.

10   **Overt Act No. 70:** In 2005, defendant NICHOLAS possessed and
11  maintained the Telescope House.

12   **Overt Act No. 71:** In 2005, defendant NICHOLAS possessed and
13  maintained the Turnberry Condo.

14   **Overt Act No. 72:** On or about January 27, 2005, defendant
15  NICHOLAS caused fees to be paid for the Turnberry Condo in the
16  amount of approximately $2,221.

17   **Overt Act No. 73:** In or around April 2005, at the Rodeo
18  Residence, defendant NICHOLAS possessed MDMA (ecstacy), cocaine,
19  and methamphetamine.

20   **Overt Act No. 74:** On or about May 31, 2005, at the Turnberry
21  Condo, defendant NICHOLAS distributed and caused to be
22  distributed controlled substances.

23

24

25

26

27

28

COUNT TWO

**[21 U.S.C. § 846]**

I.   **OBJECTS OF THE CONSPIRACY**

6.   Paragraph One of this Indictment is incorporated herein by reference as though set forth in full.

7.   Beginning in approximately January 2003 and continuing through approximately early 2006, in Orange County, within the Central District of California, and elsewhere, defendant NICHOLAS and other co-conspirators both known and unknown to the Grand Jury, knowingly and intentionally conspired and agreed with each other to acquire and obtain possession of controlled substances, namely vicoprofen, a Schedule III Controlled Substance, and diazepam (Valium), a Schedule IV Controlled Substance, by fraud, deception, and subterfuge in violation of Title 21, United States Code, Section 843(a)(3).

II.  **MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED**

8.   The objects of the conspiracy were carried out, and were to be carried out, in substance, as follows:

a.   Defendant NICHOLAS caused co-conspirators and associates to obtain vicoprofen and diazepam under the false pretense that such controlled substances were for the use of those co-conspirators and associates, when in truth, as defendant NICHOLAS then knew, such controlled substances were for defendant NICHOLAS's own use and distribution; and

b.   Defendant NICHOLAS distributed and used the vicoprofen and diazepam obtained under false pretenses.

- 14 -

III.   **OVERT ACTS**

9.    In furtherance of the conspiracy, and to accomplish its objects, on or about the following dates, defendant NICHOLAS and other co-conspirators known and unknown to the Grand Jury knowingly and intentionally committed and caused others to commit the following overt acts, among others, in the Central District of California and elsewhere:

**Overt Act No. 1**:  On or about May 1, 2003, in Newport Coast, California, defendant NICHOLAS caused Pavilion's Pharmacy to dispense approximately 60 vicoprofen tablets in the name of a co-conspirator.

**Overt Act No. 2**: On or about July 2, 2003, in Newport Coast, California, defendant NICHOLAS caused Pavilion's Pharmacy to dispense approximately 60 vicoprofen tablets in the name of a co-conspirator.

**Overt Act No. 3**: On or about August 6, 2003, in Newport Coast, California, defendant NICHOLAS caused Pavilion's Pharmacy to dispense approximately 60 vicoprofen tablets in the name of a co-conspirator.

**Overt Act No. 4**: On or about September 23, 2003, in Newport Coast, California, defendant NICHOLAS caused Pavilion's Pharmacy to dispense approximately 60 vicoprofen tablets in the name of a co-conspirator.

**Overt Act No. 5**: On or about October 16, 2003, in Newport Coast, California, defendant NICHOLAS caused Pavilion's Pharmacy to dispense approximately 60 vicoprofen tablets in the name of a co-conspirator.

- 15 -

**Overt Act No. 6:** On or about January 7, 2004, in Newport Coast, California, defendant NICHOLAS caused Pavilion's Pharmacy to dispense approximately 60 vicoprofen tablets in the name of a co-conspirator.

**Overt Act No. 7:** On or about June 1, 2004, in Newport Coast, California, defendant NICHOLAS caused Pavilion's Pharmacy to dispense approximately 100 vicoprofen tablets in the name of a co-conspirator.

**Overt Act No. 8:** On or about July 1, 2004, in Newport Coast, California, defendant NICHOLAS caused Pavilion's Pharmacy to dispense approximately 60 diazepam tablets in the name of a co-conspirator.

**Overt Act No. 9:** On or about October 7, 2004, in Newport Coast, California, defendant NICHOLAS caused Pavilion's Pharmacy to dispense approximately 100 vicoprofen tablets in the name of a co-conspirator.

**Overt Act No. 10:** On or about December 15, 2004, in Newport Coast, California, defendant NICHOLAS caused Pavilion's Pharmacy to dispense approximately 100 vicoprofen tablets in the name of a co-conspirator.

**Overt Act No. 11:** On or about December 15, 2004, in Newport Coast, California, defendant NICHOLAS caused Pavilion's Pharmacy to dispense approximately 60 diazepam tablets in the name of a co-conspirator.

**Overt Act No. 12:** On or about March 10, 2005, in Newport Coast, California, defendant NICHOLAS caused Pavilion's Pharmacy to dispense approximately 100 vicoprofen tablets in the name of a co-conspirator.

- 16 -

**COUNT THREE**

**[21 U.S.C. § 856(a)(1)]**

10.   Paragraphs One through Five of this Indictment are incorporated herein by reference as though set forth in full.

11.   Between in or around May 2003 through approximately December 2007, in Orange County, within the Central District of California, defendant NICHOLAS knowingly and intentionally maintained and used a residence located at 9 Telescope, Newport Coast, California, namely the Telescope House, for the purpose of distributing and using controlled substances.

**COUNT FOUR**

**[21 U.S.C. § 856(a)(1)]**

12. Paragraphs One through Five of this Indictment are incorporated herein by reference as though set forth in full.

13. Between in or around May 2003 through approximately May 2008, in Orange County, within the Central District of California and in Clark County, within the District of Nevada, defendant NICHOLAS knowingly and intentionally maintained and used a condominium-style residence located at One Turnberry Place, 2877 Paradise Road, Suite 3201, Las Vegas, Nevada, namely the Turnberry Condo, for the purpose of distributing and using controlled substances.

14. To facilitate such maintenance and use of the Turnberry Condo, at various times, defendant NICHOLAS caused controlled substances to be transported from Orange County, California to the Turnberry Condo. Defendant NICHOLAS further paid condo fees and property taxes and performed other acts to maintain the Turnberry Condo from Orange County, California.

A TRUE BILL

/S/

Foreperson

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

ROBB C. ADKINS
Assistant United States Attorney
Chief, Southern Division

KENNETH B. JULIAN
Assistant United States Attorney

- 18 -